UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

NAOMI COLEMAN-REED,

       Plaintiff,

v.                                     Civil Action No. 2:15-13687
                                              (Lead action)
OCWEN LOAN SERVICING LLC,
and WELLS FARGO BANK, N.A.,
AS TRUSTEE,

       Defendants.


NAOMI COLEMAN-REED,

       Plaintiff,

v.                                     Civil Action No. 2:15-13708
                                              (Consolidated)
OCWEN LOAN SERVICING LLC,
and WELLS FARGO BANK, N.A.,
AS TRUSTEE,

       Defendants.


MEMORANDUM OPINION AND ORDER


       Pending is the motion to compel arbitration, filed by defendant Ocwen Loan Servicing, LLC ("Ocwen") on May 31, 2016.


I.


       Plaintiff Naomi Coleman-Reed ("Coleman-Reed") initiated this action by filing a complaint in the circuit court

1

of Fayette County, West Virginia on September 3, 2015.  In the
complaint, Coleman-Reed alleges that defendant Ocwen is the
current servicer of the mortgage loan that she obtained in 2005
and that defendant Wells Fargo Bank, N.A., as Trustee ("Wells
Fargo as Trustee") is the current holder of the same loan.
Compl. at ¶¶ 3, 5.  According to Coleman-Reed, she filed a
petition for Chapter 7 bankruptcy on August 11, 2007 and
thereafter voluntarily converted her bankruptcy to a Chapter 13
proceeding.  Id. ¶¶ 6, 7.

        During the Chapter 13 proceeding, Wells Fargo as
Trustee filed a notice of appearance and filed a claim for
$81,805.77.  Id. at ¶¶ 8-10.  According to Coleman-Reed, after
the bankruptcy plan was confirmed, she made regular payments to
defendants, through the bankruptcy trustee, distributing
$36,621.93 to them.[1]  Id. at ¶ 11.  Thereafter, Coleman-Reed
asserts that defendants returned her payments to the bankruptcy
trustee made in December 2011, January 2012, and February 2012.
Id. at ¶ 12.  As a result, on October 11, 2012, the bankruptcy
court entered an order directing the trustee to instead disburse
these funds to other creditors, and defendants filed no

---

[1] Throughout her complaint, Coleman-Reed refers to allegations
against "Defendant," but does not specify to which defendant the
allegations apply.  Where the context indicates that Coleman-
Reed is referring to both defendants, the court will use the
plural "defendants."

2

objection.  Id. at ¶¶ 13, 14.  Because no amended proof of
claim, notice of servicing transfer, or updated address was
filed with the bankruptcy court or was communicated with the
trustee, Coleman-Reed was unable to continue payments under her
mortgage contract.  Id. at ¶¶ 15, 16.  The bankruptcy court
thereafter dismissed Coleman-Reed's bankruptcy and closed the
case on July 21, 2015.  Id. at ¶ 17.  Now, "after almost four
years with no contact" Coleman-Reed states that defendants seek
to foreclose on her home.  Id. at ¶ 18.

        Coleman-Reed alleges violations of: (1) W.Va. Code §
46A-2-115(c), for defendants' actions in returning her payments
rather than applying them to her mortgage; (2) W.Va. Code § 46A-
2-127 and § 46A-2-128 for misrepresentations and unconscionable
conduct in attempting to collect a debt; (3) breach of contract
for defendants' refusal to accept her mortgage payments; and (4)
estoppel for the failure of defendants to accept Coleman-Reed's
payments and the bankruptcy court's order that the money be
thereafter paid to other creditors.  Compl. ¶¶ 20-21, 22-24, 25-
30, 31-38.  Coleman-Reed seeks actual damages, civil penalties
under West Virginia law, attorneys' fees and the cost of
litigation, a declaration that defendants breached the mortgage
contract, that defendants be estopped from foreclosing on

Coleman-Reed's home, and all other relief the court deems
equitable and just.  Id. at p. 3-6.

On October 5, 2015, then defendant Wells Fargo Bank,
N.A. ("Wells Fargo Bank") and Ocwen filed timely notices of
removal invoking the jurisdiction of the court on the basis of
diversity jurisdiction.[2]

On May 31, 2016, Ocwen moved to compel arbitration of
Coleman-Reed's claims.  During a telephone conference with the
court and counsel for the parties on October 7, 2016, James
Burnes, counsel for Wells Fargo as Trustee, confirmed its
support of Ocwen's position and stated that it wants to
arbitrate its claims as well.  According to Ocwen, when Coleman-
Reed entered into the loan that is "at the center of her
Complaint," she signed a binding arbitration agreement ("the
Arbitration Agreement").  That agreement states that "if any
'claim' should arise between the parties, the borrower, upon

---

[2] It is noted that this case was originally filed against Ocwen
and Wells Fargo Bank.  See Compl. ¶ 4.  It was not until
September 15, 2016 that Wells Fargo Bank as Trustee was
substituted for Wells Fargo Bank as defendant.  See Consent
Order Resolving Mot. for Summary Judgment (ECF Doc. No. 37).
Because both of the then defendants separately removed the case
on the same date and both represented that the other consented
to its removal, the action was given two different case numbers.
See ECF Doc. No. 10.  The parties thereafter filed a motion to
consolidate the action, which the court granted on January 11,
2016.  See id.

election of either party, must submit the claim to be resolved by binding arbitration." Ocwen's Memo. in Supp. of Mot. to Compel Arbitration at 2; see also Exhibit 1 to Mot. in Supp. of Mot. to Compel Arbitration ("Arbitration Agreement").

The Arbitration Agreement further states that the term "'claim' is to be given the broadest possible meaning, and shall mean any claim, dispute, or controversy . . . arising from or relating to your Loan with Lender.'" Arbitration Agreement at 1. Ocwen also asserts that it is a "Lender" under the Arbitration Agreement, wherein that term is defined as "the lender under the Loan Agreement and/or any assignee of the Loan Agreement, including any subsequent assignees, together with each of such lender's and/or assignee's parents, subsidiaries, affiliates, successors or predecessors, and any past or present officers, directors and employees thereof. Id.; Ocwen's Memo. in Supp. of Mot. to Compel Arbitration at 2, n. 1. Ocwen does not explain how this provision is applicable to it. While it may be that Ocwen can be deemed an agent of Wells Fargo as Trustee and thereby governed by the terms of the Arbitration Agreement, Ocwen's role as one entitled to enforce the Arbitration Agreement has not been placed in issue.

Ocwen states that its delay in moving to compel arbitration is because it only became aware of the agreement

5

during discovery, and it thereafter requested that Coleman-Reed submit the claims to arbitration, which she refused to do. Ocwen's Memo. in Supp. of Mot. to Compel Arbitration at 2.

On June 16, 2016, Coleman-Reed filed a response in opposition to the motion to compel arbitration.  She does not contest the validity of the Arbitration Agreement, but instead alleges that Ocwen's unjustifiable delay in seeking to compel arbitration for nine months after the initial filing of the lawsuit in state court was done in order to prejudice her, and further, that Ocwen's use of "litigation machinery" before the filing of this motion has resulted in actual prejudice to her, thus waiving its right to arbitrate.  See generally, Pl. Resp. in Opp. to Ocwen's Mot. to Compel Arbitration.

In Ocwen's reply brief, it states that Coleman-Reed has failed to meet the heavy burden required to show that she has been actually prejudiced by its delay in seeking arbitration.  Ocwen's Reply to Mot. to Compel Arbitration at 2.

## II.

### A. Default under the FAA

"The rights and responsibilities of the parties with respect to the arbitration agreement are governed by the Federal Arbitration Act, _codified at_ 9 U.S.C. §§ 1-16" ("FAA").  Patten

6

Grading & Paving, Inc. v. Skanska USA Building, Inc., 380 F.3d
200, 204 (4th 2004) (internal citations omitted).  The FAA
reflects "a liberal federal policy favoring arbitration
agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr.
Corp., 460 U.S. 1, 24 (1983).  "Accordingly, 'due regard must be
given to the federal policy favoring arbitration, and
ambiguities as to the scope of the arbitration clause itself
resolved in favor of arbitration.'"  Adkins v. Labor Ready,
Inc., 303 F.3d 496, 500 (4th Cir. 2002).  Thus, when a party
moves to compel arbitration, a court must stay a proceeding of
"any issue referable to arbitration under an agreement in
writing for such arbitration."  Id. (citing 9 U.S.C. § 3).  "A
district court therefore has no choice but to grant a motion to
compel arbitration where a valid arbitration agreement exists
and the issues in a case fall within its purview."  Id. (citing
United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir.
2001).

        As earlier noted, Coleman-Reed does not contest the
validity, nor does she contest the scope, of the Arbitration
Agreement she signed.  Rather, she argues that Ocwen waived its
right to arbitration by its delay in moving to compel
arbitration.

7

"Under section 3 of the FAA, a party loses its right to stay a course of proceedings in order to arbitrate if it is 'in default in proceeding with such arbitration.'" Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 342 (4th Cir. 2009) (quoting 9 U.S.C. § 3). "Although this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985) (citing In re Mercury Construction Co., 656 F.2d 933, 939 (4th Cir. 1981), aff'd, 460 U.S. 1 (1983). "The party opposing the stay bears the heavy burden of proving waiver." American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 95 (4th Cir. 1996) (citing Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990). However, a party may more easily show that it has been prejudiced when "a party fails to demand arbitration during pretrial proceedings, and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate." Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987).

Our court of appeals has instructed that in determining whether a party has defaulted in its right to arbitrate, the "key inquiry is whether the party opposing the

stay has suffered any actual prejudice." <u>American Recovery</u>
<u>Corp.</u>, 96 F.3d at 95 (citing <u>Maxum Founds., Inc.</u> 779 F.2d at
982).  The court looks at two factors to inform the inquiry of
actual prejudice: "(1) the amount of delay; and (2) the extent
of the moving party's trial-oriented activity."  <u>Rota-McLarty v.</u>
<u>Santander Consumer USA, Inc.</u>, 700 F.3d 690, 702 (4th Cir. 2012).

### 1. <u>The Amount of Delay</u>

Coleman-Reed argues that Ocwen has been in possession
of the Arbitration Agreement since at least the filing of this
lawsuit and failed to move to compel arbitration until nine
months later.  Pl. Resp. in Opp. to Mot. to Compel Arbitration
at 4.

Coleman-Reed filed her complaint in state court on
September 3, 2015.  Ocwen moved to compel arbitration nine
months later, on May 31, 2016.  Ocwen asserts that it did not
become aware of the Arbitration Agreement until April 7, 2016,
when it was gathering documents during discovery, requested by
Coleman-Reed.  Ocwen's Reply to Mot. to Compel Arbitration at 2.
Because Ocwen was a later servicing agent for the loan, it was
unaware of the Arbitration Agreement until discovery began.
Ocwen's Memo. in Supp. of Mot. to Compel Arbitration at 2.  On
April 15, 2016, Ocwen emailed counsel for Coleman-Reed, stating
it found the Arbitration Agreement and asking if Coleman-Reed

would voluntarily submit her claims to arbitration, which she refused to do.  Ocwen's Reply to Mot. to Compel Arbitration at 3.  Ocwen then moved to compel arbitration a month and a half later, on May 31, 2016.

In Patten Grading, the defendant, Skanska USA Building, Inc. ("Skanska"), was the successor-in-interest to the relevant contract, and did not learn of the arbitration provision until discovery began.  380 F.3d at 205.  Skanska thereafter moved to compel arbitration, four months after discovery of the arbitration provision and eight months after the filing of the case.  Id.  Because plaintiff provided no evidence that Skanska was "actively or constructively aware" of the arbitration provision prior to this date, the court stated that "it [is] inappropriate to charge Skanska with the full eight months" that the action was pending.  Id.  The court instead measured the delay from the date that Skanska became aware or should have become aware of the arbitration provision. Id.

Similarly, here, Ocwen states that it only became aware of the Arbitration Agreement during discovery, on April 12, 2016.  Ocwen's Memo. in Supp. of Mot. to Compel Arbitration at 2.  Like Skanska in Patten Grading, Ocwen was not an original party to the loan agreement.  Compl. at ¶ 3; Wells Fargo Mot.

for Summary Judgment, <u>Exhibit A</u> ("Assignment of Deed of Trust");
<u>Exhibit B</u> (Notice to Coleman-Reed of "Servicing Transfer to
Ocwen").  Because here, as in <u>Patten Grading</u>, Ocwen was not an
original party to the contract, the court will measure the delay
in moving to compel arbitration from the time when it became
aware or should have become aware of the Arbitration Agreement.
Coleman-Reed cites to no evidence that Ocwen was "actually or
constructively aware" of the Arbitration Agreement prior to
April 12, 2016, when Ocwen emailed Coleman-Reed, asking if she
would consent to arbitrate her claims.  <u>See</u> <u>id.</u>  Consequently,
Ocwen's delay in moving to compel arbitration should be measured
from April 12, 2016, when it became aware of the Arbitration
Agreement, which is a month and a half before it moved to compel
arbitration.

Our court of appeals has concluded that short delays,
"without more, are insufficient to demonstrate a party's waiver
of its right to arbitration."  <u>Patten Grading</u>, 380 F.3d at 205;
<u>see</u> <u>also</u> <u>Rota-McLarty</u>, 700 F.3d at 703 (finding no prejudice in
a six-and-a-half-month delay from the filing of complaint in
state court to the date defendant moved to compel arbitration);
<u>Maxum Founds., Inc.</u>, 779 F.2d at 982 (finding no prejudice in a
three-month delay from plaintiff's filing of second amended
complaint to defendant's moving to compel arbitration).

Coleman-Reed asserts that courts "have consistently held delay to be prejudicial when the delay was greater than 6 months or where there was no reasonable cause for the delay," citing Patten Grading, 380 F.3d at 205 and Maxum Foundations, 779 F.2d at 982. Pl. Opp. to Ocwen's Mot. to Compel Arbitration at 4. However, as more fully explained above, in Patten Grading, the court stated that a delay of four months from the time the defendant became aware of the arbitration agreement until it moved to compel arbitration was not long enough to constitute default. 380 F.3d at 205. Notably, the court observed that even if the delay was counted from the filing of plaintiff's complaint to when the defendant filed the motion to compel arbitration, which would be eight months, it was "not persuaded a delay of such length would suffice to establish prejudice." Id. at 205, n.5 (citing Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985). Similarly, here, even if the court were to treat the delay as nine months, it is not, without more, so long as to establish prejudice against Coleman-Reed.

Coleman-Reed asserts that she has been prejudiced by the delay because the motion to compel arbitration was filed on the eve of the close of discovery, and less than a month before the dispositive motion deadline set by the court. Pl. Opp. to Mot. to Compel Arbitration at 4. She states that she has

"pursued a litigation strategy focusing on a jury trial including retention of expert witnesses, contacting potential witnesses, and other internal litigation preparation."  <u>Id.</u>  It has been duly observed that "[p]roximity of trial serves only as a convenient proxy by which to measure the extent of the parties' respective pre-trial efforts, and thus whether the movant has 'so substantially utliiz[ed] the litigation machinery that to . . . permit arbitration would prejudice the party opposing the stay."  <u>Patten Grading</u>, 380 F.3d at 207 (citing <u>Maxum Founds., Inc.</u>, 779 F.2d at 981).  Yet, where the pretrial activity, including discovery, was minimal, as suggested by Ocwen, "the mere proximity of the scheduled trial date" or, here, the close of discovery, "will not itself suffice to demonstrate prejudice."  <u>See id.</u>

Coleman-Reed's only allegation of actual prejudice regarding delay is that it "extends the time for a determination of the claims against it on the merits for an indeterminate time," causing her "purported arrearage [to] grow[] significantly,[3] making settlement more difficult, and potentially changing the available relief at the conclusion of the litigation."  Pl. Resp. to Mot. to Compel Arbitration at 7.  But

---

[3] The complaint alleges that Coleman-Reed "fear[s] [the] loss of her home."  Compl. at ¶ 19.  Presumably, she still lives there but has made no payment since 2012.

mere delay alone will not suffice to constitute waiver.  <u>See</u>
<u>Maxum Founds., Inc.</u>, 779 F.2d at 982.  The court is not
persuaded that the month and a half delay of Ocwen in moving to
compel arbitration has resulted in actual prejudice with respect
to the growing loan amount in dispute in this matter.  It is
also noteworthy that Coleman-Reed could have avoided this delay
entirely by submitting her claims to arbitration when Ocwen
requested she do so in the April 15, 2016 email.  Finally, the
change in the "available relief at the conclusion of the
litigation," is not a result of Ocwen's delay in seeking
arbitration, but rather, is due to the contractual obligation in
the Arbitration Agreement itself that Coleman-Reed signed, which
"may not serve as the basis of a finding of waiver."  <u>See</u> <u>Patten</u>
<u>Grading</u>, 380 F.3d at 208 (finding that any prejudice to the
plaintiff from a contractual obligation contained in an
arbitration agreement may not be used to support a finding of
waiver).  Accordingly, because "[n]othing . . . suggests that
this delay, in and of itself," caused Coleman-Reed actual
prejudice, it cannot serve as a basis of a determination of
default.  <u>See</u> <u>MicroStrategy Inc.</u>, 268 F.3d at 250 (internal
citations omitted).

      2. <u>Extent of the Moving Party's Trial-Oriented Activity</u>

Coleman-Reed argues that Ocwen has "utilized the litigation machinery in a number of significant ways," which include

> removing this suit to federal court; answering this suit and asserting affirmative defenses that arise under the Federal Rules of Civil Procedure; both producing and relying on pretrial discovery disclosures required under the Federal Rules of Civil Procedure; responding to interrogatories and requests for production of documents, including disputing or objecting to Plaintiff's requests as permitted under the Federal Rules of Civil Procedure; and relying on responses to discovery produced by a co-defendant in response to Plaintiff's requests.

Pl. Resp. in Opp. to Mot. to Compel Arbitration at 6.  She also asserts that Ocwen "engaged in briefing . . . that is currently pending . . . on the proprietary of its refusal to produce a witness for deposition."  Id.

a. Responsive Pleadings

Our court of appeals has found that "a party's filing of minimal responsive pleadings, such as an answer or compulsory counter-claim, are not necessarily inconsistent with an intent to pursue arbitration."  Patten Grading, 380 F.3d at 206 (internal citations omitted).  Ocwen has engaged in what should be considered "minimal responsive pleadings."  See id.  Ocwen removed the case to federal court, filed an answer to the complaint which included affirmative defenses, joined in a

15

motion to consolidate the cases and responded in opposition to Coleman-Reed's motion for discovery sanctions.

None of these pleadings is inconsistent with an intent to pursue arbitration.  First, a party does not give up its right to arbitrate by failing to raise the arbitration agreement as an affirmative defense in its answer.  See <u>Am. Recovery Corp.</u>, 96 F.3d at 96 ("Simply failing to assert arbitration as an affirmative defense does not constitute default of a right to arbitration.").

Because Coleman-Reed, not Ocwen, instituted the motion for sanctions to which Ocwen responded, the court need not consider it in assessing Ocwen's default.  See <u>Wheeling Hosp., Inc.</u>, 683 F.3d at 588 (citing <u>Patten Grading</u>, 380 F.3d at 206 (the court does not evaluate "activity that the moving party did not initiate in assessing that party's default.").  Further, there is no evidence that these minimal pleadings prejudiced Coleman-Reed in any way.

Coleman-Reed also asserts that Ocwen only moved to compel arbitration because Coleman-Reed sought sanctions for Ocwen's failure to produce a witness for deposition.  Pl. Resp. in Opp. of Mot. to Compel Arbitration at 2.  She further alleges that the "[p]ending motion for discovery sanctions against Ocwen weighs heavily in favor of a finding of its default in seeking

16

arbitration." <u>Id.</u> at 6-7.  Plaintiff adds that "[i]n effect,
Ocwen is hedging that if it loses that motion, it will be able
to relitigate the matter in arbitration." <u>Id.</u>  As Ocwen
explains, it first notified Coleman-Reed of the Arbitration
Agreement in an email before Coleman-Reed filed the motion for
sanctions.  Ocwen's Reply to Mot. to Compel Arbitration at 3.
Even if Coleman-Reed had established that Ocwen filed the motion
to compel arbitration for an improper purpose, "the moving
party's reason for delay is not relevant to the default inquiry
under our precedent." <u>Rota-McLarty</u>, 700 F.3d at 702 (stating
that the court was not "unsympathetic to [plaintiff's] position
that parties should not be allowed to game the system and delay
seeking arbitration to see how things go in federal court and
thereby get 'a second bite at the apple'. . . . However, in
keeping with the strong policy in favoring of arbitration
established by the FAA, the Fourth Circuit has not expanded the
default analysis to include consideration of a party's knowledge
or motive.") (internal citations omitted).  This argument is
thus without merit.  Accordingly, Coleman-Reed has failed to
show that Ocwen's filing of responsive pleadings have prejudiced
her or are inconsistent with its intent to arbitrate.

    b. <u>Discovery Efforts</u>

When assessing a party's default due to discovery, our court of appeals has considered how far along in the discovery process the parties were when the motion to compel arbitration was filed.  In Patten Grading, the court found that because discovery had been limited to the exchange of interrogatories and requests for production of documents and that the parties had not noticed depositions, the plaintiff was not disadvantaged.  380 F.3d at 206.

Discovery had been similarly limited in this case in that the parties had only filed initial disclosures, interrogatories and requests for production of documents when the motion to compel arbitration was filed.  At the time, Ocwen's discovery actions in the case consisted of: the filing of its initial disclosures pursuant to Rule 26(a)(1), as ordered by the court; the receipt of Coleman-Reed's initial disclosures; and the filing of its objections and responses to Coleman-Reed's first set of interrogatories and requests for production of documents.  Although Coleman-Reed noticed a telephonic deposition on April 15, 2016, that deposition did not occur.[4] Coleman-Reed has not demonstrated that she expended a large amount of time or expense due to the noticing of the deposition

---

[4] After the briefing in the matter was completed, Coleman-Reed again noticed depositions.

18

or that she was otherwise prejudiced as a result of it.  See id. at 206-07.

A party moving to compel arbitration is not required to disregard discovery deadlines set by the court until the court considers its motion.  See Maxum Founds., Inc., 779 F.2d at 983.  ("We decline to create a rule that would require a party seeking arbitration to avoid a finding of default by ignoring court-ordered discovery deadlines and assuming the risk that its motion under the Federal Arbitration Act will be unsuccessful.").  Coleman-Reed's allegations regarding Ocwen's filing of initial disclosures and responding to Coleman-Reed's interrogatories and requests for production of documents are without merit, as Ocwen's filings and responses were in compliance with court-ordered discovery deadlines.

Coleman-Reed alleges that she will be actually prejudiced if the court grants the motion to compel arbitration because of the "substantial attorney time that will be largely duplicated if she has to change forums and engage in pre-hearing arbitration process."  Pl. Resp. in Opp. to Mot. to Compel Arbitration at 6-7.  Inasmuch as Coleman-Reed has not indicated the amount of the expenses she was required to expend as a result of the delay, the court cannot evaluate the prejudice she will suffer as a result.  See Wheeling Hosp., Inc., 683 F.3d at

19

590 (finding that it is the burden of the plaintiffs to prove
the expenses they suffered as a result of the moving party's
litigation activity; "unsupported conclusory assertions about
those expenses are insufficient to meet that burden").

Coleman-Reed next argues that she has suffered actual
prejudice due to the "significant time developing a trial
strategy . . . [that is] likely well understood by movant
[Ocwen] at this late stage of litigation." Pl. Resp. in Opp. to
Mot. to Compel Arbitration at 7. She argues that her litigation
strategy has been revealed through answers to interrogatories,
request for production from Ocwen and Wells Fargo Bank, and
through responses she made to Wells Fargo Bank pursuant to
"interrogatories and request for production of documents
revealing her fact witnesses, pattern and practice witnesses and
theory of recovery on each of her claims to the movant." Just
as the court does not consider Ocwen's responses to motions
filed by Coleman-Reed, the court also does not consider
discovery activity conducted by or for defendant Wells Fargo
Bank in assessing Ocwen's default. See Patten Grading, 380 F.3d
at 206. In any event, Coleman-Reed has "fail[ed] to demonstrate
that [Ocwen] availed itself of discovery procedures unavailable
in arbitration, or gained a strategic advantage" because of the
discovery conducted by Wells Fargo Bank. See id. at 207; see

also <u>MicroStrategy, Inc.</u>, (finding that if the same information could have been obtained in the arbitration proceeding, then plaintiff would have suffered no prejudice by providing the information prior to arbitration.).  Coleman-Reed has not explained which discovery documents or interrogatories given to Wells Fargo Bank allowed Ocwen to understand specific litigation strategies in this case, resulting in prejudice to her.

Inasmuch as the discovery conducted in this case was limited and the parties did not conduct any depositions, Coleman-Reed has not shown that she was disadvantaged by the discovery activity.  As a result, she has not met the "heavy burden" of showing that Ocwen defaulted on its right to arbitration.  <u>See</u> <u>American Recovery</u>, 96 F.3d at 95.

B. <u>Scope of Arbitration</u>

Because Ocwen has not defaulted on its right to arbitration, the court must determine whether the claims against Wells Fargo as Trustee are also subject to the Arbitration Agreement.  While Wells Fargo as Trustee did not join in Ocwen's motion to compel arbitration, counsel for Wells Fargo as Trustee has, since it became a party defendant on September 15, 2016, as noted below, stated that it consents to the motion and wishes to arbitrate the claims against it.

21

As noted in footnote 2, Coleman-Reed originally sued Ocwen and Wells Fargo Bank.  Wells Fargo Bank filed a motion for summary judgment on July 13, 2016, arguing in part that Coleman-Reed had improperly sued Wells Fargo Bank in its individual capacity and that the proper defendant was Wells Fargo as Trustee.  <u>See</u> Wells Fargo Bank Memo. in Supp. of Mot. for Summary Judgment at 1.  On September 15, 2016, Wells Fargo Bank and Coleman-Reed entered into a "Consent Order Resolving Motion for Summary Judgment" where the parties agreed to substitute as defendant Wells Fargo as Trustee for Wells Fargo Bank and further agreed to the denial of the remainder of the motion for summary judgment without prejudice.  <u>See</u> Consent Order Resolving Mot. for Summary Judgment.

It appears that Ocwen moves to compel arbitration of all of Coleman-Reed's claims, including those against Wells Fargo as Trustee.  It is clear that Coleman-Reed's claims against Wells Fargo as Trustee are also subject to the Arbitration Agreement and accordingly must also be resolved in arbitration.

The Arbitration Agreement at issue states that "upon election by Lender or by you, any Claim shall be resolved by binding arbitration."  Arbitration Agreement at 1.  "Lender" under the Arbitration Agreement is defined as "the lender under

the Loan Agreement and/or any assignee of the Loan Agreement, including any subsequent assignees, together with each of such lender's and/or assignee's parents, subsidiaries, affiliates, successors or predecessors, and any past or present officers, directors and employees thereof." **Id.** Ocwen claims, and Coleman-Reed does not dispute that, "'Lender' is defined to include Ocwen." Ocwen's Memo. in Supp. of Mot. to Compel Arbitration at 2, n. 1. Presumably, Ocwen, as the current servicer of the loan, is an agent of Wells Fargo as Trustee. See Servicing Transfer to Ocwen.

The loan agreement was assigned to Wells Fargo Bank as Trustee for Morgan Stanley ABS Capital I Inc. Trust. See Assignment of Deed of Trust. Indeed, the assignment of the deed of trust, dated May 13, 2005, states in relevant part that,

> This assignment of deed of trust from Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Decision One Mortgage Company, LLC, . . . its successors and assigns, ("Assignor) to Wells Fargo Bank, National Association, As Trustee for the Pooling and Servicing Agreement Dated as of August 1, 2005 Morgan Stanley ABS Capital I Inc. Trust 2005-HE4 Mortgage Pass-Through Certificates, Series 2005-HE4, whose address is c/o Ocwen Loan Servicing, LLC, . . . (Assignee) all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of Fayette County, State of West Virginia.

**Id.** Wells Fargo as Trustee is thus an assignee of the loan, and claims against it are covered under the Arbitration Agreement.

Although Wells Fargo as Trustee did not initially move to compel arbitration, counsel for Wells Fargo as Trustee confirmed in a telephone conference with the court and counsel for the parties on October 7, 2016, as earlier noted, that Wells Fargo as Trustee wants the claims against it to go to arbitration.  Ocwen, as noted, has moved to compel arbitration of all of Coleman-Reed's claims.  The term "claim" under the Arbitration Agreement is sufficiently broad to include claims against Wells Fargo as Trustee as well as those against Ocwen. "Claim" is there defined to

> be given the broadest possible meaning, and shall mean any claim, dispute, or controversy, whether based upon contract, tort (intentional or otherwise, constitution, statute, common law, regulation, ordinance or equity, and whether pre-existing, present or future, including initial claims, counter-claims, cross-claims, third party claims and claims seeking relief of any type, including damages and/or injunctive, declaratory or other equitable relief, arising from or relating to Your Loan with Lender or the Loan Agreement, the relationships which result from Your Loan with Lender or the Loan Agreement, or any products or services offered in connection with Your Loan with Lender or the Loan Agreement, including, but not limited to, any dispute or controversy concerning, the validity or enforceability of this Arbitration Agreement, any part thereof or the entire Loan Agreement, and whether or not the Claim is subject to arbitration. . . .

Arbitration Agreement at 1 (emphasis added).  Coleman-Reed's complaint alleges that Ocwen and Wells Fargo as Trustee refused to accept her mortgage payments and now, four years later, seek to foreclose on her home.  Because these claims relate to the

servicing and substance of Coleman-Reed's loan, they arise from the loan and the loan agreement, and are therefore covered under the Arbitration Agreement.  See generally, Compl.

        The court finds that the elements required to compel arbitration are satisfied.[5]  First, a dispute exists between the parties regarding whether Coleman-Reed's claims must be resolved in arbitration and presumably over, inter alia, whether defendants failed to accept her loan payments, thereby breaching the contract and violating West Virginia law.  Second, as the court has discussed, there is a written Arbitration Agreement that covers Coleman-Reed's claims against Ocwen and Wells Fargo as Trustee.  The court further finds that the third element, that the agreement affects interstate commerce, is met.  Fourth, Coleman-Reed has thus far refused to arbitrate this dispute, as

---

[5] In this circuit, a party may compel arbitration if the following elements are met:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Adkins, 303 F.3d at 500-01 (internal citations and quotations omitted).

evidenced by her opposition to Ocwen's motion to compel arbitration.

Accordingly, Coleman-Reed's claims against Ocwen and Wells Fargo as Trustee are covered under the Arbitration Agreement and should be sent to arbitration pursuant to it.

III.

For the foregoing reasons, Ocwen's motion to compel arbitration is granted.  Accordingly, it is ORDERED that plaintiff Naomi Coleman-Reed submit to arbitration her claims raised in this case against defendants Ocwen and Wells Fargo as Trustee in accordance with the terms of the Arbitration Agreement.

The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties.

Dated: October 28, 2016

John T. Copenhaver, Jr.
United States District Judge